FILED

at_____O'clock &_____min._____M

MAY 3 1 2006

United States Bankruptcy Court
Columbia, South Carolina (26)

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re, | C/A No. 03-04149-jw |
| Robert Carl Glover and Joyce Elaine Glover, | Adv. Pro. No. 05-80098-jw |
| Debtors. | Chapter 11 |
| Joyce Elaine Glover, | **ORDER** |
| Plaintiffs, | |
| v. | |
| Saunders Inc. of Hilton Head,  RE/MAX Island Realty, and Richard B. Saunders | |
| Defendants. | |

ENTERED

MAY 3 1 2006

L. G. R.

This matter comes before the Court upon a Motion for Partial Summary Judgment ("Motion") filed by Joyce Elaine Glover ("Debtor").  In the Motion, Debtor seeks to obtain judgment against Saunders, Inc., RE/MAX Island Realty, and Richard B. Saunders (collectively referred to as "Defendants") for willful violation of the automatic stay pursuant to 11 U.S.C. § 362.[1]  The Court conducted a hearing on the Motion.  Accordingly, based upon the record developed in this adversary proceeding by the parties' pleadings, affidavits, exhibits, and hearing arguments, the Court makes the following findings of fact and conclusions of law.[2]

## FINDINGS OF FACT

Debtor's bankruptcy case and this adversary proceeding have followed a convoluted procedural history that spans almost three years with various stages conducted in this Court,

---

[1]    The version of the Bankruptcy Code (11 U.S.C. § 101 et seq.) prior to the amendments provided by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") shall be the controlling statutory law referenced throughout this Order because Debtor's bankruptcy case and this adversary proceeding were filed prior to the October 17, 2005 effective date for the BAPCPA's provisions.

[2]    To the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to the extent any Conclusions of Law constitute Findings of Fact, they are also adopted as such.

state court, and arbitration.[3]  Certain material factual issues and legal disputes between the parties have been substantively addressed during the course of this case.  Accordingly, the Court provides the following account of Debtor's relationship with Defendants, her bankruptcy filings, and her adversary proceeding.

1.      From May 1, 1990 to September 7, 2004, Debtor was a real estate agent with RE/MAX Island Realty.  Debtor worked with RE/MAX Island Realty as an independent contractor pursuant to the terms of an agreement and an amendment to the agreement (collectively the agreement and amendment are the "RE/MAX Agreement").  The RE/MAX Agreement comprises the contract that governed the relationship between Debtor and RE/MAX Island Realty.  Debtor and RE/MAX Island Realty are the only parties to the RE/MAX Agreement.

2.      RE/MAX Island Realty is an organization that is owned and operated by Saunders, Inc. of Hilton Head, which in turn is owned and operated by Richard Saunders.

3.      On August 30, 2002, Debtor and her spouse filed for Chapter 13 bankruptcy relief.  However, the Court dismissed the case ("Case no. 02-10306") pursuant to 11 U.S.C. § 109(e) because Debtor and her spouse exceeded the jurisdictional limits for certain claims against their estate.

4.      On March 31, 2003, Debtor advised Defendants of a sales contract for a parcel of real property known as the "Ford Tract."  Under the terms of the sales contract ("Ford Transaction"), the purchaser of the Ford Tract agreed to pay a 10% commission to RE/MAX on the $3,950,000.00 sale price.

5.      In a letter dated April 1, 2003, Defendants advised Debtor that they intended to deduct $50,000.00 from Debtor's share of the $395,000.00 commission generated by the Ford

---

[3]      The Court also notes that this case was reassigned to the undersigned upon the retirement of another bankruptcy judge for this district.

Transaction in order to collect an alleged commission advance made to Debtor on September 15, 2000.

6.      On April 4, 2003, Debtor and her spouse filed a second Chapter 13 case ("Case No. 03-04149").

7.      A certificate of service for Debtor's Notice of Chapter 13 Case, Meeting of Creditors, and Deadlines ("Notice of Chapter 13 Case") indicates that Debtor mailed RE/MAX Island Realty a notice of her bankruptcy filing at 840 William Hilton Parkway, Hilton Head Island, SC 29928.  The certificate of service further indicates that Debtor also mailed a Notice of Chapter 13 Case to Island West Commercial Associates, C/O Richard Saunders, 846 William Hilton Parkway, Hilton Head Island, SC 29928.

8.      In a letter dated April 15, 2003, Debtor's bankruptcy counsel further advised Defendants that Debtor was in bankruptcy and that the retention of $50,000.00 to collect a commission advance was improper.  Debtor's bankruptcy counsel also advised Defendants that the automatic stay provided by § 362(a) of the Bankruptcy Code prohibited any acts to engage in collection actions against Debtor and her co-filing spouse during their bankruptcy case.

9.      Debtor and her co-filing spouse filed their bankruptcy Schedules and Statement of Financial Affairs on May 6, 2003 after receiving extensions of time to file such documents.

10.     On Schedule B, Debtor listed $564,000.00 in accounts receivable for commissions owed by Defendants.  Debtor also listed $14,208.00 in broker fees, which she owed to RE/MAX Island Realty, as an unsecured claim on Schedule F.  On an addendum to Schedule I, Debtor noted that she expected to collect commissions related to the closing of certain properties under contract with DR Horton.

11.     On May 15, 2003, the Ford Transaction closed, and generated the $395,000.00 commission to be distributed between Debtor and RE/MAX Island Realty.

3

12.    However, when Debtor's share of the Ford Transaction commission was remitted, Defendants, despite receiving notice of Debtor's bankruptcy case and being notified of the protection provided by the automatic stay, withheld $50,000.00 to offset an alleged and disputed prepetition commission advance that Defendants had provided. Debtor vigorously opposed the $50,000.00 deduction.

13.    On September 24, 2003, Debtor converted her Chapter 13 case to a case under Chapter 11 of the Bankruptcy Code.

14.    In an attempt to collect her share of commissions generated by the closing of the Ford Transaction, Debtor filed suit against Defendants in state court on May 14, 2004. In the state court action, Debtor asserted causes of action for (1) breach of contract; (2) breach of contract accompanied by fraud; (3) conversion; (4) avoidance of Defendants' preferential transfer, and (5) violation of the automatic stay against Defendants.

15.    Sometime during September, 2004 and early October, 2004, Defendants and Debtor agreed to a voluntary termination of the RE/MAX Agreement. Defendants acknowledged and accepted the voluntary termination of the RE/MAX Agreement by a letter dated October 4, 2004.

16.    On November 10, 2004, Debtor and her co-filing spouse amended their Schedule F to include a $14,208.00 unsecured claim owed to Richard and Lois Saunders.

17.    On March 2, 2005, Debtor's Chapter 11 plan of reorganization was confirmed. The Disclosure Statement for Debtor's confirmed plan listed a secured claim held by Richard Saunders.[4]

18.    On March 30, 2005, Debtor filed a complaint against Defendants in this Court to collect her share of the commissions from the Ford Transaction closing, and to establish that

---

[4]    Debtor's Disclosure Statement and plan were amended on two occasions. The secured claim of Richard Saunders was listed on the Third Addendum to Disclosure Statement, which was recognized in the order confirming Debtor's Chapter 11 plan.

4

Defendants owed her other commissions associated with real property sales that were under contract while she was with Defendants, but closed after she terminated her relationship with Defendants.

19.     The Court entered a Final Decree closing Debtor's bankruptcy case on July 22, 2005. Upon the consent of Debtor's bankruptcy counsel and Defendants' counsel, the Court retained jurisdiction to address this adversary proceeding and Debtor's objection to Defendants' claims. Debtor's bankruptcy case was administratively closed on July 26, 2005.

20.     Defendants failed to answer the complaint that Debtor filed in this Court on March 30, 2005; thus, they were in default.

21.     However on July 21, 2005, Debtor amended her complaint in this adversary proceeding to assert the following causes of actions against Defendants: collection and restitution of personal property, violation of the automatic stay, recovery of post-petition transaction, recovery of voidable transfer, and unjust enrichment.

22.     Pursuant to a consent order filed on August 17, 2005, the Court vacated the default, permitted Debtor to amend her complaint, and established a new deadline for Defendants to answer. In the order, the parties also agreed to arbitrate Debtor's state court causes of action for Breach of Contract, Breach of Contract Accompanied by a Fraudulent Act, and Conversion.[5]

23.     On December 12, 2005, an arbitrator entered an Award and Decision in Arbitration ("Arbitration Award") on the breach of contract, breach of contract accompanied by a fraudulent act, and conversion causes of action that this Court referred to him pursuant to the consent order filed on August 17, 2005.

24.     In the Arbitration Award, the arbitrator concluded as follows:

---

[5]     The remaining state court causes of action, which were related to Debtor's bankruptcy, were apparently dismissed or subsumed into the causes of action that Debtor filed in this adversary proceeding.

a. The arbitrator stated that "The effect of this decision as to any Bankruptcy Court issues I will leave to the Bankruptcy Court for further instruction."

b. Under the terms of the RE/MAX Agreement Debtor and Defendants were to split the commission on the Ford Transaction 70/30. Thus, Debtor was entitled to 70% of the $395,000 commission and Defendants were entitled to the remaining 30%.

c. Debtor is entitled to 50% of the commissions generated by transactions that were under contract while Debtor was affiliated with Defendants, but closed after she terminated her affiliation with Defendants (hereafter such commissions shall be referred to as "Post-Termination Commissions").

d. Defendants improperly deducted $50,000 from Debtor's share of the Ford Tract commission; thus, Debtor is entitled to the $50,000 that Defendants deducted.

e. The arbitrator did not find that Defendants committed a breach of contract accompanied by fraudulent act or an act of conversion.

f. The arbitrator dismissed Richard Saunders from the three state court causes of action adjudicated in the arbitration.

25. The parties' consent order of August 17, 2005, which referred matters to arbitration, provided that this Court would enter judgment for either party on any final determinations made by the arbitrator.

26. Unhappy with the result reached by the arbitrator, Debtor moved to vacate the Arbitration Award. However, by an order filed on January 18, 2006, this Court denied Debtor's motion to vacate. The Court ordered that "the Arbitrator's [Arbitration Award] is an interlocutory matter which may only be reviewed and/or appealed upon entry of a final Order and Judgment by this Court in this Adversary Proceeding and that the Arbitrator's [Arbitration Award] shall be incorporated into any such Order and Judgment entered in this case."

27. On February 23, 2006, Debtor filed her Motion to obtain partial summary judgment on the willful violation of the automatic stay cause of action asserted in this adversary proceeding. Debtor contends that there are no genuine issues of material fact as to the willful violation of

6

stay cause of action, and that as a matter of law she is entitled to a judgment which establishes

that Defendants are liable for a willful violation of the stay for (1) improperly withholding

$50,000.00 of commissions from the Ford Transaction closing and (2) failing to pay other

commissions associated with sales contracts that closed after termination of her affiliation with

Defendants.

28.      In a Memorandum in Opposition to Debtor's Motion ("Objection to Summary

Judgment"), Defendants contend that Debtor is not entitled to summary judgment on the willful

violation of stay cause of action because of the following:

    a.  Defendants held a good faith belief that they were entitled to withhold
    the commissions in dispute; and thus, they cannot be held liable for a
    willful violation of the stay.

    b.  Debtor is not entitled to obtain a judgment against Richard Saunders
    because the arbitrator dismissed Richard Saunders from the arbitration
    of the Breach of Contract, Breach of Contract Accompanied by Fraud,
    and Conversion causes of action.

    c.  Debtor should be estopped from asserting a claim for commissions
    against Defendants because (1) Debtor failed to list as a debt a
    $100,000.00 loan that RE/MAX Island Realty made to Debtor's spouse,
    and (2) Debtor's spouse improperly misled Defendants from filing the
    $100,000.00 claim against Debtor's bankruptcy estate.

    d.  Debtor is not entitled to collect commissions for certain properties
    under contract that closed after Debtor terminated her affiliation with
    Defendants because Debtor rejected the RE/MAX Agreement by failing
    to assume the RE/MAX Agreement under the terms of her confirmed
    Chapter 11 plan.

29.      During the hearing on Debtor's Motion, Debtor's counsel advised the Court that Debtor

would only pursue her bankruptcy causes of action for turnover[6] and a willful violation of the

automatic stay. Accordingly, as stipulated by the parties, Debtor's bankruptcy causes of action

for Recovery of Post-petition Transaction, Recovery of Voidable Transfer, and Unjust

Enrichment are withdrawn. Thus, this Court shall only consider the parties' right to judgment

---

[6]      Debtor characterized the turnover action as "Collection and Restitution of Personal Property" in her
Amended Complaint.

on the final determinations made in the Arbitration Award, Debtor's turnover cause of action, and Debtor's willful violation of stay cause of action.

## CONCLUSIONS OF LAW

### I.  Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Bankr. P. 7056 (making Fed. R. Civ. P. 56(c) applicable to adversary proceedings in a bankruptcy case). In determining whether to grant a motion for summary judgment, the Court does not weigh the evidence; instead, it determines if there is a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Initially, Debtor, as the party moving for summary judgment, must demonstrate the absence of any genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Upon a demonstration that there are no genuine issues of material fact in dispute, then the burden shifts to Defendants, as the non-moving party, to set forth specific facts that demonstrate that a genuine issue of material fact exists for trial. Id. Furthermore, the Court must construe any underlying facts in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### II.  Incorporation of the Arbitration Award and Judgment on the Arbitrator's Findings

Both parties have agreed that they are bound by the determinations provided by the terms of the Arbitration Award with the respect to the breach of contract, breach of contract accompanied by fraudulent act, and conversion state court causes of action. Therefore, to the extent any of the findings in the Arbitration Award bear upon issues remaining under Debtor's complaint in this adversary proceeding, the findings and conclusions are binding upon the parties. Furthermore, the August 17, 2005 consent order that directed the parties to arbitration

8

provided that the arbitration would result in the following with respect to Debtor's state court litigation:

> If the defendants therein prevail, judgment shall be entered accordingly on those issues. [This shall also be res judicata as to these issues in Bankruptcy Court] [sic] If the plaintiff Joyce Glover prevails on one or more of the three causes of actions, judgment shall be entered on liability and damages. This case shall be dismissed with leave to enter the arbitration judgment.

Therefore, the Court shall incorporate the arbitrator's findings and conclusions into this Order and issue judgments accordingly.

In her amended bankruptcy complaint, Debtor asserted that Defendants improperly withheld certain commissions that she was entitled to receive. In the Arbitration Award, the arbitrator determined that Debtor is entitled to receive $50,000.00 and certain Post-Termination Commissions from Defendants. Therefore, with respect to Defendants' liability to remit certain funds to Debtor under the state court breach of contract action and the turnover action asserted in this adversary proceeding, the Court enters judgment for Debtor. Based upon the findings of the arbitrator, it is ordered that Debtor is entitled to a judgment that requires the immediate remittance of $50,000.00 from Defendants to Debtor. Further, Debtor is also entitled to a judgment for a specified amount of Post-Termination Commissions. However, because the *amount* of Post-Termination Commissions that Debtor is due was not determined by the arbitration award and not apparent from the record in this Court, the amount of Post-Termination Commissions owed to Debtor shall be determined at a hearing on damages.

The Arbitration Award also concluded that Defendants were not liable for any breach of contract accompanied by fraudulent intent or an act of conversion and that Richard Saunders cannot be liable for any of the state court causes of action referred to arbitration. Accordingly, the Court enters judgment in favor of Defendants for Debtor's state court causes of action for breach of contract accompanied by fraudulent intent and conversion, and concludes that Richard Saunders cannot be liable for any of the state court causes of action referred to the arbitrator.

*III.   Debtor's Willful Violation of Automatic Stay Action*

Debtor asserts two separate grounds for her willful violation of stay cause of action. First, Debtor contends that Defendants' improper retention of $50,000.00 constitutes a willful violation of stay.   Second, Debtor contends that Defendants' failure to pay certain Post-Termination Commissions, which were owed to her during her bankruptcy, also constitutes a willful violation of the stay. The Court shall discuss each ground separately.

*a.   Defendants' improper withholding of the $50,000.00*

Debtor asserts that during her bankruptcy case, Defendants intentionally withheld $50,000.00 of her share of commissions from the Ford Transaction closing in order to collect a disputed prepetition commission advance.  To demonstrate a willful violation of the automatic stay, Debtor must demonstrate that Defendants knew of her pending bankruptcy petition and intentionally attempted to continue collection procedures in spite of it.  See Georgetown Steel Co. LLC v. Capital City Insurance Co., Inc. (In re Georgetown Steel Co., LLC), 318 B.R. 313, 334 (Bankr. D.S.C. 2004) (providing the Fourth Circuit definition of a willful violation of stay pursuant to Budget Serv. Co. v. Better Homes of Virginia, Inc., 804 F.2d 289, 293 (4th Cir.1986)).  See also Hansen v. Lexington Court, LLC (In re Sage Richmond, LLC), 297 B.R. 57, 60 (Bankr. E.D. Va. 2003) ("a willful violation of the stay does not require specific intent to violate the stay, only knowledge of the stay and an intentional act").

The record of this case indicates that Debtor's right to the $50,000.00 arose when the Ford Transaction closed in May, 2003.  In the Arbitration Award, the arbitrator found that Defendants improperly withheld $50,000.00 in commissions to collect a claim owed by Debtor's spouse. Accordingly, the arbitrator concluded that Debtor was entitled to receive the $50,000.00 withheld by Defendants following the closing of the Ford Transaction.  The record of Debtor's bankruptcy case indicates that Defendants had notice of Debtor's bankruptcy filing, yet continued to retain the $50,000.00 during the administration of her case despite Debtor's

demand for the funds. Under such circumstances, Defendants committed a willful violation of the stay by retaining the $50,000.00 commission when the Ford Transaction closed despite having notice of Debtor's bankruptcy.

Defendants contend that their withholding of the $50,000.00 cannot be construed as a willful violation of the stay because the retention of the $50,000.00 was not conclusively deemed improper until entry of the Arbitration Award; and therefore, Defendants retained the $50,000.00 in good faith. Defendants further assert that the retention of the $50,000.00 cannot be a willful violation of the stay because Debtor has indicated that she intends to seek an appeal of the Arbitration Award. The Court disagrees as a matter of law.

It has been held that "[a] creditor may willfully violate the automatic stay even if the creditor believed itself justified in taking action found to be violative of the stay." In re Sage Richmond, LLC, 297 B.R. at 60. Under the circumstances, if Defendants doubted their obligation to pay Debtor the $50,000.00, then they should have promptly sought relief in this Court to protect their interests. See id. ("A creditor with doubt as to how the stay will apply to property of the estate should seek court permission and relief from stay.") (internal quotations omitted). Instead, Defendants unilaterally withheld the $50,000.00 that Debtor was entitled to receive, and in doing so triggered the consequences of what the arbitrator deemed an improper act. Id. ("A creditor attempting to unilaterally interpret the application of the stay undertakes the risk of sanctions under § 362."). Therefore, as a matter of law, Defendants are liable for a willful violation of the stay for their retention of the $50,000.00 due upon the closing of the Ford Transaction. See 11 U.S.C. § 362(a)(6) ("a petition filed under section 301, 302, or 303 of [the Bankruptcy Code] operates as a stay, applicable to all entities, of . . . (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of this case under this title ....").

Furthermore, post-petition retention of property in which a debtor has an interest can also be considered a willful violation of the automatic stay. See Joyner v. Dick Smith Nissan, Inc. (In re Joyner), 326 B.R. 334, 345 (Bankr. D.S.C. 2004) (noting that continued retention of collateral that was improperly repossessed post-petition may constitute a willful violation of the stay when the creditor has notice of the pending bankruptcy case). In this case, Debtor's interest in the $50,000.00 arose upon the post-petition closing of the Ford Transaction and its turnover or payment was clearly demanded by Debtor. Accordingly, Defendants' improper post-petition retention of the $50,000.00 since the closing of the Ford Transaction also gives rise to a willful violation of the stay. Therefore, Debtor is entitled to $50,000.00 and a further hearing to establish any other actual damages, including attorney's fees, and punitive damages arising from Defendants' improper retention of the $50,000.00.

    b.    *Post-Termination Commissions*

Debtor also asserts that Defendants failed to timely pay her 50% of Post-Termination Commissions. The Arbitration Award indicates that Defendants must pay Debtor certain Post-Termination Commissions. Accordingly, to the extent that Defendants owed Debtor Post-Termination Commissions during her bankruptcy case, the Court grants summary judgment for turnover of such amounts. The Court also grants Debtor summary judgment for the willful violation of stay action that concerns Defendants' failure to pay such commissions. The amount of Post-Termination Commissions to be paid to Debtor and any damages associated with failing to pay such commissions shall be determined at a further hearing. In the alternative, to the extent there were no Post-Termination Commissions owed to Debtor during her bankruptcy case, the Court grants judgment for Defendants.

    c.    *Richard Saunders may be liable for a willful violation of the automatic stay*

Richard Saunders contends that he cannot be liable for Debtor's bankruptcy causes of action because he was dismissed from the arbitration proceedings. However, the arbitration

proceedings only addressed certain state court actions for breach of contract, breach of contract accompanied by fraudulent act, and conversion. Given the limited extent of the issues before the arbitrator, the Court concludes that the arbitrator could not make sufficient findings to formally dismiss Mr. Saunders from the bankruptcy causes of action currently being adjudicated by this Court.

Mr. Saunders could be personally liable for acts that constitute a willful violation of the stay if he personally frustrated Debtor's efforts to collect funds that she was entitled to receive. In this Court's view, it would take specific proof not yet in the record to demonstrate that Mr. Saunders acted beyond his capacity as an officer or agent of RE/MAX Island Realty or Saunders, Inc. of Hilton Head to be personally liable for any willful violation of stay. In this case, the evidence presently before the Court does meet that standard, and a genuine issue of material fact as to Mr. Saunders' personal liability for a willful violation of the stay remains. Accordingly, summary judgment is denied with respect to Mr. Saunders' personal liability for any willful violation of the automatic stay.

### IV. Defendants' various Defenses

In this bankruptcy action, Defendants asserted various defenses to prevent Debtor from collecting commissions owed to her under the terms of the RE/MAX Agreement. To the extent that any of defenses were applicable to the state court actions subject to the parties' arbitration, the Court considers them adjudicated since the arbitrator rendered a final decision concerning Debtor's rights and Defendants' liability under the RE/MAX Agreement. Therefore, the Court shall not revisit the merits of any defenses related to the state court causes of action subject to arbitration.[7] However, the arbitrator did not consider Defendants' bankruptcy defenses, which will be addressed herein.

---

[7]    In their answer to Debtor's amended bankruptcy complaint, Defendants asserted the following defenses to avoid paying Debtor any commissions under the terms of the RE/MAX Agreement: (1) Debtor was

13

###### a. *Debtor should be estopped from asserting a claim against Defendants*

In the Objection to Summary Judgment, Defendants contend that Debtor should be estopped from pursuing withheld commissions and prosecuting a willful violation of stay action because Debtor failed to list Richard Saunders' $100,000.00 loan to her spouse on the bankruptcy schedules. Defendants also contend that because Debtor's spouse convinced Richard Saunders to refrain from filing a proof of claim in Debtor's bankruptcy, Debtor should be precluded from pursuing the withheld commissions and her willful violation of stay cause of action. Debtor objected to these estoppel defenses because Defendants asserted them for the first time in the Objection to Summary Judgment.

Defendants' answer indicates that they initially pled equitable estoppel to prevent Debtor from pursuing commissions owed under the terms of the RE/MAX Agreement. Liability for any commissions under the RE/MAX Agreement was determined in arbitration; therefore, it appears that any applicable state law estoppel defense would have been considered and determined by the arbitrator. Nevertheless, to the extent that Defendants assert an alternative estoppel defense theory in their Objection to Summary Judgment, the Court shall examine the merits of the defense in the context of this summary judgment determination. Since Defendants did not clearly articulate whether they assert a judicial estoppel theory or equitable estoppel theory, the Court shall examine Defendants' estoppel defense under both theories.[8]

---

not entitled to collect commissions under the terms of the RE/MAX Agreement; (2) unjust enrichment; (3) equitable estoppel; and (4) setoff and recoupment. Defendants also asserted that Debtor's adversary proceeding is an abuse of process because she initiated litigation in both state court and this court. However, since the parties' August 17, 2005 consent order resolved issues concerning where and how the state court litigation and bankruptcy court litigation proceeded, Defendants' abuse of process defense no longer appears at issue.

[8]     A review of Debtor's schedules indicates that she listed Defendants' obligation to pay her commissions. Furthermore, the Disclosure Statement for Debtor's confirmed Chapter 11 plan lists litigation proceedings against Richard Saunders and RE/MAX Island Realty for collection of commissions. Under the record before the Court, Debtor provided adequate notice to Defendants of her intent to pursue commissions owed to her. Therefore, the Court cannot conclude that Debtor took inconsistent positions with respect to her pursuit of commissions from Defendants.

In the Fourth Circuit, the presence of the following factors is generally required to apply judicial estoppel: (1) the party estopped must be asserting a position that is factually incompatible with a position taken in a prior judicial or administrative proceeding and the position sought to be estopped must be one of fact rather than law or legal theory; (2) the prior inconsistent position must have been accepted by the tribunal; and (3) the party to be estopped must have taken inconsistent positions intentionally for the purpose of gaining unfair advantage. Shadow Factory Films, Ltd. v. Swilley (In re Swilley), 295 B.R. 839, 850 (Bankr. D.S.C. 2003) (citing 1000 Friends of Maryland v. Browner, 265 F.3d 216, 226 (4th Cir. 2001)). "Judicial estoppel, however, will not be applied where the party's inconsistent positions result from inadvertence or mistake." In re Swilley, 295 B.R. at 850.

Equitable estoppel "arises when one party has made a misleading representation to another party and the other party has reasonably relied to his detriment on that representation." In Georgetown Steel Co. LLC, 318 B.R. 340, 350 (Bankr. D.S.C. 2004) (quoting Bakery and Confectionary Union v. Ralph's Grocery Co., 118 F.3d 1018 (4th Cir. 1997)). In the context of bankruptcy, equitable estoppel applies when: (1) the party estopped knew the relevant facts; (2) the party estopped intended for its conduct to be acted or relied upon, or the party acting had the right to believe the conduct was so intended; (3) the party acting was ignorant of the true facts; and (4) the party acting relied on the conduct to its injury. In Georgetown Steel Co. LLC, 318 B.R. at 350 (citing First Union Commercial Corp. v. Nelson Mullins Riley and Scarborough (In re Varat Enters., Inc.), 81 F.3d 1310, 1317 (4th Cir. 1996)).

            *i.  Failure to list Richard Saunders' $100,000 claim on the bankruptcy schedules*

A review of the record in Debtor's bankruptcy case indicates that the Debtor and her co-filing spouse listed Richard Saunders' loan as a secured claim in their Disclosure Statement. In the Disclosure Statement, Debtor further states that "[t]he Debtor may have possible litigation

15

proceedings against Island West Commercial Associates, LLC, Richard Saunders, [and] Remax Island Realty...to determine the validity, extent and priority of liens and interests." Furthermore, Debtor's Disclosure Statement provides that Mr. Saunders and RE/MAX Island hold an $80,000.00 lien on certain shareholder interests and a promissory noted held by Debtor's spouse. Debtor's bankruptcy schedules also indicate that Debtor and her spouse initially listed an unsecured $14,208.00 claim to RE/MAX Island Realty on their Schedule F. The schedules were later amended to include a $14,208.00 unsecured claim owed to Richard Saunders. The disclosure of the obligations between Debtor and Defendants in the Disclosure Statement and bankruptcy schedules is significant because it demonstrates that Debtor and her co-filing spouse acknowledged that they owed certain debts to Defendants and sought to address such debts in their bankruptcy.

Given Defendants' notice of Debtor's bankruptcy, the listing of Richard Saunders' loan in Debtor's Disclosure Statement, and the disclosure of Defendants' unsecured claims on the bankruptcy schedules, it does not appear that Debtor took either inconsistent positions or made misrepresentations. Therefore, Defendants' estoppel argument fails.

### ii.  Misleading Richard Saunders

Defendants also assert that *Debtor's spouse* misled Defendants from properly filing a $100,000.00 claim against the bankruptcy estate during Debtor's Chapter 11 case so that *Debtor* should be estopped from asserting claims against them. In this case, Defendants "must go beyond the pleadings and identify with specificity facts supporting the existence of a disputed fact" with respect to their particular estoppel defense. See Federal Leasing, Inc. v. Amperif Corp., 840 F.Supp. 1068, 1071 (D. Md. 1993) (citing Fed. R. Civ. P. 56(e) and Celotex Corp. v. Catrett, 477 U.S. at 325). However, after reviewing the pleadings of this case, the affidavit provided by Defendants, and the arguments presented at the hearing on Debtor's Motion, there appears to be no evidence specifically indicating that *Debtor* personally misled Defendants from

filing a proof of claim. Without any evidence demonstrating that *Debtor* committed specified acts that amounted to a false representation or concealment of material facts concerning Defendants' $100,000 claim, this form of Defendants' estoppel argument also fails.

> b. *Debtor's rejection of the RE/MAX Agreement extinguishes her right to collect her share of commissions.*

Defendants assert that Debtor rejected the RE/MAX Agreement because she did not assume it when her Chapter 11 plan was confirmed; and therefore, Defendants conclude that they cannot be liable under the RE/MAX Agreement's provisions. Debtor contends that the RE/MAX Agreement was not required to be assumed or rejected under bankruptcy law because Debtor and Defendants agreed to terminate the contract during her bankruptcy. According to Debtor, since the parties agreed to terminate the RE/MAX Agreement before the confirmation of her Chapter 11 plan, she could no longer assume the RE/MAX Agreement; thus, the RE/MAX Agreement was a non-executory contract that is not subject to 11 U.S.C. § 365.

Under Fourth Circuit law, a contract is deemed an executory contract if the "obligations of both the bankrupt and the other party to the contract are so far underperformed that the failure of either to complete the performance would constitute a material breach excusing the performance of the other."    In re Sunterra Corp., 361 F.3d 257, 264 (4th Cir. 2004). Furthermore, if an agreement is not executory, then it is not subject to § 365, and the agreement would have survived the bankruptcy filing unaffected.    See id. n.11. It is also important to note that "the date a bankruptcy petition is filed is the critical time for determining whether a contract is executory." Id. n.12.

Because the Court must view the facts in a light most favorable to Defendants as the non-moving party, the Court assumes for this Motion that the RE/MAX Agreement was an executory contract at the time Debtor filed for bankruptcy. Nevertheless, Defendants cannot prevail on their legal contention that rejecting the RE/MAX Agreement prevents Debtor from

pursuing her rights under it because (i) as a matter of law, rejection of the RE/MAX Agreement did not extinguish Debtor's rights under the contract, and (ii) Debtor and Defendants agreed to terminate the RE/MAX Agreement postpetition *before* Debtor could assume or reject it.

### i.  Effect of rejecting the RE/MAX Agreement

Even if the Court concluded that Debtor had the ability to assume or reject the RE/MAX Agreement after the agreed upon termination, Defendants cannot prevail because (1) rejection of the RE/MAX Agreement does not extinguish the parties' rights under the agreement and (2) the post-petition termination of the RE/MAX Agreement did not extinguish Debtor's vested rights under the agreement.

Defendants conclude that Debtor's rejection of the RE/MAX Agreement ended her rights under the agreement.  The Court disagrees as a matter of law.  "When an executory contract is rejected, the rejection constitutes a breach of such contract... (1) immediately before the date of the filing of the petition." In re Alongi, 272 B.R. 148, 153 (Bankr. D. Md. 2001) (quoting 11 U.S.C. § 365(g)(1)).  However, "the rights and obligations of the parties remain intact after a rejection because rejection does not change the substantive rights of the parties to a contract, but merely means the bankruptcy estate will not be a party to it." Id. (quoting Michael T. Andrew, Executory Contracts in Bankruptcy:  Understanding "Rejection", 59 U Colo. L. Rev. 845, 848-49 (1988)) (internal quotations omitted).  More importantly, Debtor's rejection was not the equivalent to a rescission of contract, and it neither divested Debtor of her vested rights under the RE/MAX Agreement nor necessitated the undoing or reversal of the already executed portions of the RE/MAX Agreement.  See Mendez v. St. Charles at Olde Court Partnership, LLC (In re Mendez), 321 B.R. 814, 819 (Bankr. D. Md. 2005) (concluding that rejection under the Bankruptcy Code does not divest the rejecting party's rights under the terms of the contract and applicable state law); Williams v. Tomer (In re Tomer), 128 B.R. 746, 756 (Bankr. S.D. Ill. 1991) ("rejection was not equivalent to rescission and does not require the undoing or reversal of

18

already executed portions of the contracts"). Because the substantive rights of the parties under the terms of the RE/MAX Agreement arise under state law, the critical issue here is whether Debtor had a right to receive commissions under the terms of the RE/MAX Agreement before and after the parties agreed to terminate it.

In this case, the Arbitration Award has established the rights and obligations of the parties to the RE/MAX Agreement utilizing state law. In the Arbitration Award, the arbitrator concludes that Debtor is entitled to receive $50,000.00 in withheld funds associated with the closing of the Ford Transaction. The arbitrator also concludes that Debtor is entitled to receive certain Post-Termination Commissions from Defendants. Given such findings, it is clear that under portions of the RE/MAX Agreement Debtor had a vested right to certain payments that Defendants owed to Debtor before and after the termination of the RE/MAX Agreement. Therefore, Debtor was not required to formally assume the RE/MAX Agreement upon the confirmation of her Chapter 11 plan to maintain and enforce her vested rights, as recognized by the arbitrator under the terms of the RE/MAX Agreement, because rejecting the RE/MAX Agreement did not divest or extinguish Debtor's contractual rights. In re Mendez, 321 B.R. at 819.

ii. *Termination of the RE/MAX Agreement prior to confirmation of Debtor's Chapter 11 plan.*

In their Objection to Summary Judgment, Defendants acknowledged that Debtor terminated the RE/MAX agreement *before* the confirmation of her plan by stating as follows in reference to a letter dated October 4, 2004:

> The termination of Joyce Glover's contractual relationship with RE/MAX came at Joyce Glovers' request. RE/MAX honored her request despite not having received 60 days notice.

Because the RE/MAX Agreement was terminated before the confirmation of her Chapter 11 plan, there was no executory contract for Debtor to assume; and thus, the RE/MAX Agreement could neither be assumed or rejected pursuant to 11 U.S.C. § 365.

In this case, termination of the RE/MAX Agreement without cause by either party was done "upon the giving of sixty days' [sic] advance written notice to the other." However, as indicated in their Objection to Summary Judgment, Defendants waived the 60 day notice period required by the RE/MAX Agreement. Therefore, by the consent of the parties, Debtor terminated the RE/MAX Agreement sometime in September or October, 2004 before the confirmation of her plan. Accordingly, Debtor could no longer assume or reject the RE/MAX Agreement at the time her Chapter 11 plan was confirmed on March 2, 2005.

   c.   *Setoff and Recoupment against commissions and damages awarded to Debtor*

In the answer to Debtor's amended bankruptcy complaint, Defendants asserted that they are entitled to setoff or recoupment against any amounts awarded to Debtor. "Recoupment and setoff rights are determined by nonbankruptcy law, which ordinarily is state law." New York State Electric & Gas Corp. v. McMahon (In re McMahon), 129 F.3d 93, 96 (2d Cir. 1997). Because the defenses of setoff and recoupment are established under state law, Defendants' right to assert setoff and recoupment was an issue to be adjudicated during the parties' arbitration. The Arbitration Award indicates that the arbitrator did not recognize, uphold or sustain Defendants' setoff and recoupment defenses. Therefore, the Court concludes that Defendants are not entitled to assert setoff and recoupment against Debtor's share of commissions or any additional damages awarded to her in this bankruptcy proceeding.

   V.   *Conclusion*

Accordingly, in light of circumstances of this case and the analysis provided herein, the Court makes the following conclusions.

Pursuant to the terms of the Arbitration Award, the Court enters judgment in favor of Defendants for Debtor's state court causes of action for breach of contract accompanied by fraudulent intent and conversion.

Debtor's bankruptcy causes of action for recovery of post-petition transaction, recovery of voidable transfer, and unjust enrichment are dismissed without prejudice.

Pursuant to the Arbitration Award, Debtor is entitled to receive the $50,000.00 that Defendants withheld from Debtor upon the closing of the Ford Transaction during Debtor's bankruptcy case. Furthermore, Defendants' withholding of the $50,000.00 constitutes a willful violation of stay. Therefore, the Court grants Debtor judgment for turnover of $50,000.00, and grants Debtor summary judgment as to Defendants' liability for a willful violation of the stay for withholding the $50,000.00 owed to Debtor. Debtor is entitled to a further hearing to establish any other actual damages and punitive damages arising from Defendants' willful violation of the stay.

With respect to the Arbitration Award's ruling on Post-Termination Commissions, the Court concludes that Debtor is entitled to collect 50% of Post-Termination Commissions that arose during her bankruptcy. Therefore, the Court grants judgment as to Defendants' liability to pay Post-Termination Commissions owed to Debtor pursuant to the terms prescribed by the arbitrator. However, establishing the amount of Post-Termination Commissions that Debtor is entitled to collect under the terms of the Arbitration Award during her bankruptcy case, and Defendants' liability, if any, for a willful violation of stay for any failure to pay such commissions during Debtor's bankruptcy case are issues to be further determined at a damages hearing.

Although Richard Saunders is not personally liable for any amounts awarded under the terms of the Arbitration Award, genuine issues of material fact remain as to whether any of Mr. Saunders' actions constitute a willful violation of the automatic stay. Therefore, the Court

denies judgment as to Richard Saunders' personal liability for turnover of $50,000.00 and Post-Termination Commissions owed to Debtor, and denies summary judgment for any willful violation of the automatic stay.

As a matter of law, Defendants' estoppel, rejection of contract, setoff, and recoupment defenses do not preclude Debtor from pursuing turnover of commissions or an action for a willful violation of the automatic stay.

Therefore, in light of the foregoing, a damages hearing to (1) establish damages associated with the willful violation of stay related to Defendants' improper retention of Debtor's $50,000.00; (2) establish the amounts of Post-Termination Commissions owed to Debtor during her bankruptcy case and any damages for the willful violation of stay related to those commissions; and (3) determine Mr. Saunders' liability, if any, on Debtor's willful violation of the automatic stay action shall be scheduled by separate order of the Court.

**AND IT IS SO ORDERED.**

_John E Waites_
UNITED STATES BANKRUPTCY JUDGE

Columbia, South Carolina,
May 31, 2006